IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CAROLYN BALDWIN,                     )
                                    )
                Plaintiff,        )
                                    )      CIVIL ACTION
vs.                                 )
                                    )      Case No. 1:25-CV-02603
CPF-HIGHLANDS RANCH LLC,      )
                                    )
                Defendant.     )

## COMPLAINT

COMES NOW, CAROLYN BALDWIN, by and through the undersigned counsel, and files this, her Complaint against Defendant, CPF-HIGHLANDS RANCH LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's CPF-HIGHLANDS RANCH LLC, failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff CAROLYN BALDWIN (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Littleton, CO (Douglas County).

3.      Plaintiff is disabled as defined by the ADA.

4.    Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.    Plaintiff uses a wheelchair for mobility purposes.

6.    In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.    Defendant, CPF-HIGHLANDS RANCH LLC, (hereinafter "CPF-HIGHLANDS RANCH LLC") is a foreign limited liability corporation that transacts business in the State of Colorado and within this judicial district.

8.    Defendant, CPF-HIGHLANDS RANCH LLC, may be properly served with process via its Registered Agent for service, to wit:  c/o Corporation Service Company, Registered Agent, 1900 W. Littleton Blvd., Littleton, CO  80120.

## FACTUAL ALLEGATIONS

9.    On or about July 24, 2025, Plaintiff was a customer at "Five Guys," a restaurant located at 9352 S. Colorado Blvd., Highlands Ranch, CO  80126, referenced herein as "Five

2

Guys". *See* Receipt attached as Exhibit 1. *See* also photo of Plaintiff attached as Exhibit 2.

10.     Defendant, CPF-HIGHLANDS RANCH LLC, is the owner or co-owner of the real property and improvements that Five Guys is situated upon and that is the subject of this action, referenced herein as the "Property."

11.     Defendant, CPF-HIGHLANDS RANCH LLC, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, CPF-HIGHLANDS RANCH LLC, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

12.     Plaintiff's access to Five Guys and the other businesses, located at 9352 S. Colorado Blvd., Highlands Ranch, CO  80126, Douglas County Property Appraiser's property identification number: 2229-121-03-001 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.     Plaintiff lives less than 4 miles from the Property.

14.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

15.    Plaintiff has visited the Property over ten times previous before as a customer and advocate for the disabled.  She has previously been a customer of the Whole Foods Market and Pei Wei restaurant.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer to Five Guys, a return visit to Whole Foods Market, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

16.    Plaintiff intends on revisiting the Property to purchase food as a return customer of multiple stores and restaurants at the Property as well as for Advocacy Purposes but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

17.    Plaintiff travelled to the Property as a customer ten times before as a customer, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

18.    Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as,

for example, one accessible parking space may not be available and she would need to use an alternative accessible parking space in the future on her subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

19.     Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

20.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

21.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

     (v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

22.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

23.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

24.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

25.     The Property is a public accommodation and service establishment.

26.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

27.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

28.     The Property must be, but is not, in compliance with the ADA and ADAAG.

29.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in her  capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of her  disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her  access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Defendant, CPF-HIGHLANDS RANCH LLC, has discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. §

12182(b)(2)(A)(iv).

32.    Defendant, CPF-HIGHLANDS RANCH LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, CPF-HIGHLANDS RANCH LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

33.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

     i.    Across the vehicular way from Home Depot, the four accessible parking spaces have a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increase the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

     ii.    Nearest Pei Wei, the access aisle serving the two accessible parking spaces has a vertical rise at the top in excess of ¼ inch and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel

to the public accommodations offered at the Property as the vertical rise could cause the tire of the wheelchair to get snagged or impede movement.

iii.     Nearest Pei Wei, the accessible curb ramp lacks a clear and level area at the top of the ramp of at least 36 inches in length past the top of the ramp in violation of Section 406.4 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to access the public accommodations offered at the Property because a clear and level landing is necessary for Plaintiff to safely turn from the ramp towards the entrances, by not having a clear and level landing, Plaintiff is forced to turn on a sloped surface which can cause the wheelchair to tip over and cause injury.

iv.     Nearest Pei Wei, as a result of the barrier to access referenced in iii, the surfaces of the accessible route lack a level turning space of at least a 60 inches in diameter circle or a 60-inch square minimum t-shaped space in violation of Section 304.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because if Plaintiff is forced to turn on a sloped surface this can cause the wheelchair to tip over and cause injury.

v.     Nearest Pei Wei, the walking surfaces of the accessible route have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

vi.    Adjacent to Pei Wai, the accessible parking space has a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increase the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

vii.    The access route leading from the accessible parking space nearest Pei Wei leads to an accessible ramp which has a vertical rise at the base that is approximately an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

viii.    At the entrance to Pei Wei with the single door, there is a doorway threshold with a vertical rise in excess of ½ (one half) inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff to tip over when attempting to enter.  Moreover, this barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to

hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

ix.   At the entrance to Pei Wei with the single door, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

x.   In front of Five Guys, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

xi.   In front of Five Guys, the accessible curb ramp adjacent to the access aisle lacks a clear and level area at the top of the ramp of at least 36 inches in length past the top of the ramp in violation of Section 406.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the public accommodations offered at the Property because a clear and level landing is necessary for Plaintiff to safely turn from the ramp towards the entrances, by not having a clear and level

landing, Plaintiff is forced to turn on a sloped surface which can cause the wheelchair to tip over and cause injury.

xii.    In front of Five Guys, the walking surfaces of the accessible route near the accessible ramp referenced in ix have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

xiii.    In front of Five Guys, the accessible curb ramp in front of the entrance lacks a clear and level area at the top of the ramp of at least 36 inches in length past the top of the ramp in violation of Section 406.4 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to access the public accommodations offered at the Property because a clear and level landing is necessary for Plaintiff to safely turn from the ramp towards the entrances, by not having a clear and level landing, Plaintiff is forced to turn on a sloped surface which can cause the wheelchair to tip over and cause injury.

xiv.    In front of Five Guys, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the

12

doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

xv.    In front of the entrance to Five Guys, due to the placement of the accessible ramp in front of two parking spaces, when a vehicle is parked in either of the parking spaces, there lacks adequate space for Plaintiff to utilize the accessible ramp. As a result, the Property lacks an accessible route from this accessible ramp to the accessible entrance of Five Guys in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xvi.    At Five Guys, there is not at least 5% (five percent) of the exterior dining surfaces provided for consumption of food or drink that comply with Section 902.2 of the 2010 ADAAG standards, requiring appropriate knee and toe clearance complying with Section 306 of the 2010 ADAAG standards, positioned for a forward approach, in violation of Section 226.1 of the 2010 ADAAG standards. If Plaintiff were to eat at the Property in the future, this barrier to access would prevent Plaintiff from using the dining surfaces currently present as Plaintiff's own feet would block Plaintiff's ability to access the dining surfaces.

xvii.    At Pei Wei, there is not at least 5% (five percent) of the exterior dining surfaces provided for consumption of food or drink that comply with Section 902.2 of the 2010 ADAAG standards, requiring appropriate knee and toe clearance complying with Section 306 of the 2010 ADAAG standards,

positioned for a forward approach, in violation of Section 226.1 of the 2010 ADAAG standards. If Plaintiff were to eat at the Property in the future, this barrier to access would prevent Plaintiff from using the dining surfaces currently present as Plaintiff's own feet would block Plaintiff's ability to access the dining surfaces. While there is a table currently present designed with adequate knee and toe clearance, in its current configuration, the space at the table with adequate knee and toe clearance is rotated directly adjacent to a mental fence so that there is no clear floor space to gain access to the section of the table that does have knee and toe clearance.

xviii. Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**FIVE GUYS RESTROOMS**

xix. There is a policy of keeping the trash can in close proximity to the restroom door. As a result, the door of the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent trash can, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

xx. Due to the placement of a paper towel dispenser within 12" above parts of the rear grab bar, there is inadequate space between the grab bar and objects

placed above the grab bar in violation of Section 609.3 of the 2010 ADAAG

Standards. This barrier to access would make it difficult for Plaintiff to safely

transfer from the wheelchair to the toilet and back.

34.     The violations enumerated above may not be a complete list of the barriers,

conditions or violations encountered by Plaintiff and/or which exist at the Property.

35.     Plaintiff requires an inspection of the Property in order to determine all of the

discriminatory conditions present at the Property in violation of the ADA.

36.     The removal of the physical barriers, dangerous conditions and ADA violations

alleged herein is readily achievable and can be accomplished and carried out without significant

difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

37.      All of the violations alleged herein are readily achievable to modify to bring the

Property into compliance with the ADA as the modifications necessary to cure the barriers to

access identified in this Complaint which are present at the Property are the type of

modifications specifically listed as "readily achievable" within 28 C.F.R. § 36.304.

38.     Upon information and good faith belief, the removal of the physical barriers and

dangerous conditions present at the Property is readily achievable because the nature and cost of

the modifications are relatively low.

39.     Upon information and good faith belief, the removal of the physical barriers and

dangerous conditions present at the Property is readily achievable because Defendant, CPF-

HIGHLANDS RANCH LLC, has the financial resources to make the necessary modifications.

According to the Property Appraiser, the Appraised value of the Property is $5,564,100.00

40.     The removal of the physical barriers and dangerous conditions present at the

Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit

and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

41.     Upon information and good faith belief, the Property has been altered since 2010.

42.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant, CPF-HIGHLANDS RANCH LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

44.     Plaintiff's requested relief serves the public interest.

45.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, CPF-HIGHLANDS RANCH LLC.

46.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, CPF-HIGHLANDS RANCH LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

47.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, CPF-HIGHLANDS RANCH LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant CPF-HIGHLANDS RANCH LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, CPF-HIGHLANDS RANCH LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, CPF-HIGHLANDS RANCH LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: August 20, 2025.          Respectfully submitted,

                                 Law Offices of
                                 THE SCHAPIRO LAW GROUP, P.L.

                                 /s/  Douglas S. Schapiro
                                 Douglas S. Schapiro, Esq.
                                 State Bar No. 54538FL
                                 The Schapiro Law Group, P.L.
                                 7301-A W. Palmetto Park Rd., #100A
                                 Boca Raton, FL 33433
                                 Tel: (561) 807-7388
                                 Email: schapiro@schapirolawgroup.com

                                 ATTORNEYS FOR PLAINTIFF